# EXHIBIT "A"

CONTROL # 25536

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement"), subject to the approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, is made and entered into by and among the following Parties: (1) the Class Representative, Joan Carsten, individually and on behalf of all Class Members (as defined in paragraph number 3 below) (the "Settlement Class") and (2) University of Miami (including its affiliates) ("UM"). From time to time throughout this Agreement, the Class Representative may be referred to as "Plaintiff."

    1.    <u>Definitions</u>.

As used in this Agreement, the following terms have these meanings:

    (a)    "Action" means the case entitled *Joan Carsten v. University of Miami*, Case No. 1:14-cv-20497-KMW, pending in the United States District Court for the Southern District of Florida.

    (b)    "Agreement" means this settlement agreement.

    (c)    "Class Counsel" means John Allen Yanchunis, Sr., Morgan & Morgan Complex Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, Florida 33602.

    (d)    "Court" means the United States District Court for the Southern District of Florida, Miami Division.

    (e)    "Defendant's Counsel" means Alfred J. Saikali, Shook Hardy & Bacon, LLP, 201 S. Biscayne Blvd., Suite 3200 Miami, Florida 33131.

    (f)    "Effective Date" means the date when all the following shall have occurred:

    (i)    this Agreement has been fully executed;

    (ii)    the Court has approved and entered the Preliminary Approval Order in all material respects in the form annexed hereto as Exhibit A;

    (iii)    the Court has approved this settlement, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

    (iv)    the Court has approved and entered an Order of Final Approval and Final Judgment, in all material respects in the form set forth in Exhibit B, and the Order of Final Approval and Final Judgment is final (meaning that the time for appeal has expired with no appeal taken, all appeals are resolved and none are left pending, or the Order of Final Approval and Final Judgment is affirmed in all material respects after completion of the appellate process).

    (g)    "Final Approval" shall occur when the time period for an appeal has expired with no appeal taken, all appeals are resolved and none are left pending, or the Order of Final

Approval and Final Judgment is affirmed in all material respects after completion of the appellate process.

(h)     "Final Fairness Hearing" means the hearing in the Action for the Court to consider final approval of this settlement and the entry of the Order of Final Approval and Final Judgment.

(i)     "Incident" means the discovery in 2013 that documents containing the Protected Health Information and possibly other personally identifiable information of patients of the University of Miami Miller School of Medicine stored with off-site document storage vendors could not be located.

(j)     "Opt-Out" means any class member described in paragraph number 3 of this Agreement, which validly and effectively excludes himself or herself from the Settlement Class.

(k)     "Order of Final Approval and Final Judgment" means the proposed order to be entered by the Court approving this Agreement, in all material respects in the form set forth in Exhibit B annexed hereto.

(l)     "Parties" means (1) the Class Representative, Joan Carsten, individually and on behalf of the Settlement Class, and (2) UM.

(m)     "Protected Health Information" or "PHI" is defined in 45 CFR 160.103 and means information, including demographic information collected from an individual, and: (1) is created or received by a health care provider, health plan, employer, or health care clearinghouse; (2) relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (3) that identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual. PHI does not include: (1) education records covered by the Family Educational Rights and Privacy Act; (2) records described at 20 U.S.C. 1232g(a)(4)(B)(iv); and (3) employment records held by a covered entity in its role as employer.

(n)     "Preliminary Approval Order" means the proposed order to be entered by the Court preliminarily approving this settlement and providing for notice to the Settlement Class, in all material respects in the form set forth as Exhibit A annexed hereto.

(o)     "Released Parties" means UM and each of its current and former directors, officers, trustees, employees, attorneys, accountants, agents, subsidiaries, parents, affiliates, insurers, insurance brokers, co-insurers, heirs, executors, administrators, predecessors, successors, assigns, financial advisors, banks, investment bankers, underwriters, representatives, associates, business associates, general and limited partners and partnerships, consultants, auditors, divisions, joint venturers, related or affiliated entities, document, record, and information storage and management vendors, and any entity in which UM has or had a controlling interest.

(p)     "Releasing Parties" means Plaintiff and the members of the Settlement Class who have not opted out of the settlement and each of their respective spouses, executors,

representatives, heirs, predecessors, successors, bankruptcy trustees, guardians, wards, joint tenants, tenants in common, tenants by the entirety, co-borrowers, agents, attorneys and assigns, and all those who claim through them or who assert claims on their behalf.

(q)     "Security Program" means the policies and procedures implemented by the University of Miami Miller School of Medicine that are designed to secure and protect from unauthorized disclosure the PHI of its patients.

(r)     "Settled Claims" means any and all petitions, complaints, actions, suits, claims, demands, rights, liabilities, obligations, controversies, promises, agreements, damages, costs, losses, attorneys' fees, pre-judgment interest, post-judgment interest, expenses and causes of action, of every nature and description whatsoever, including future claims, at law or in equity, concealed or hidden, known or unknown, vested or contingent, that were asserted or that could have been asserted as claims or counterclaims in the Action, that the Settlement Class or UM had or now have, which arise out of, or could have been asserted based upon, or will be asserted based upon, or relate in any way to:

(i)     the documents containing Protected Health Information or other personally identifiable information of members of the Settlement Class that could not be located in 2013 by UM or its document, record, and information storage vendors, associates, and business associates; or

(ii)    the defense, settlement, or resolution of the Action or the Settled Claims.

The definition of Settled Claims shall not impair or restrict the rights of the Parties to enforce the terms of this Agreement.

(s)     "Settlement Class" means the class members described in paragraph number 3 of this Agreement, excluding any Opt-Outs as defined in this Agreement.

(t)     "Umpire" means David H. Lichter, Higer Lichter & Givner, 18305 Biscayne Blvd., Suite 302, Aventura, Florida 33160.

2.     Negotiations.

Soon after Plaintiff filed this Action, UM and Class Counsel met to discuss material matters, including potential common grounds for a settlement. To facilitate that discussion, the parties engaged in a voluntary mediation of the Action before a certified mediator on June 2, 2014. The Parties reached an agreement in principle on the material terms of a class action settlement during that mediation. Thereafter, the Parties engaged in arm's-length negotiations concerning the specific terms of the settlement, which negotiations culminated in this Agreement.

3.     The Settlement Class.

"Settlement Class" means those patients of the University of Miami Miller School of Medicine whose protected health information was contained within documents stored with a document storage vendor that could not be located in 2013.

Excluded from the Settlement Class are: any Opt Outs; UM, any entity in which UM has a controlling interest, and UM's legal representatives, officers, directors, assignees, and successors; anyone who has waived or released any claims against the University of Miami regarding the Incident; and any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons.

4.    Settlement Consideration.

Subject to approval by the Court, UM shall provide the following consideration and none other for this settlement:

(a)    Monetary Consideration

(i)    UM will pay up to a maximum aggregate total of $100,000.00 for claims submitted by members of the Settlement Class, determined to be valid claims pursuant to the provisions of Paragraph 9 of this Agreement.

(ii)    UM will pay up to $90,000.00 for the attorneys' fees, costs, and expenses of Class Counsel.

(iii)    UM will pay up to $1,500.00 as an incentive award to Plaintiff for her service as Class Representative.

Apart from these obligations and the obligations established below related to Notice Costs, UM shall have no further monetary obligations under the terms of the settlement. UM's obligation to pay any of the foregoing monetary consideration is contingent upon Final Approval by the Court of this settlement.

(b)    Non-Monetary Consideration

UM agrees to perform (or continue to perform) the following security precautions upon the Effective Date of this Agreement:

(i)    Security Program Lead.   University of Miami Miller School of Medicine must designate an employee or employees to coordinate and be responsible for the Security Program.

(ii)    Risk Assessments.    University of Miami Miller School of Medicine must perform a risk assessment that identifies material internal and external risks to the security, possession, confidentiality, integrity, or use of the PHI of patients of the University of Miami Miller School of Medicine that could result in the unauthorized disclosure, misuse, loss, alteration, destruction, or other compromise of such PHI. University of Miami Miller School of Medicine must also assess the sufficiency of its Security Program to control these risks. These risk assessments must be performed at one year, three years, and five years from the Effective Date of this Agreement.

(iii)     Remedial Action Resulting From Risk Assessments.  If the results of the risk assessments discussed in Paragraph 4(b)(ii) reveal any material internal or external risk that requires remedial action by University of Miami Miller School of Medicine to safeguard against such risk, University of Miami Miller School of Medicine must implement such remedial action within one hundred eighty (180) business days of the conclusion of the risk assessment that identified the risk.

(iv)     Notice to Class Counsel.  If the results of the risk assessments discussed in Paragraph 4(b)(ii) reveal no material internal or external risk that requires remedial action by University of Miami Miller School of Medicine, then UM must notify Class Counsel of that conclusion in writing.  If the risk assessments discussed in Paragraph 4(b)(ii) reveal a risk that requires remedial action discussed in Paragraph 4(b)(iii), UM must notify Class Counsel in writing that a risk was identified by the assessment and that University of Miami Miller School of Medicine has developed an appropriate remedial action and is in the process of implementing such remedial action.  For clarity, University of Miami Miller School of Medicine need not provide Class Counsel with the specifics of the risk assessments and the associated remedial actions, if any.

(v)     Vendor Program.  University of Miami Miller School of Medicine must use reasonable steps to select and retain service providers capable of maintaining appropriate security practices for the PHI of its patients.  University of Miami Miller School of Medicine must require service providers by contract to implement and maintain appropriate safeguards to protect the PHI of its patients.

(vi)     Dynamic Security Program.  University of Miami Miller School of Medicine must evaluate and adjust its Security Program in light of:  (1) any material changes to its operations or business arrangements; or (2) any other circumstances that it knows or has reason to know may have a material impact on the effectiveness of its security program.

5.     Class Counsel's Attorneys' Fees, Costs, and Expenses.

(a)     Class Counsel shall seek approval of the Court for attorneys' fees, costs, and expenses incurred by Class Counsel in litigating, handling, and resolving the Action (the "Fee and Expense Award").  Class Counsel shall not seek approval of a Fee and Expense Award that exceeds $90,000.00.  UM agrees not to oppose an application for such a Fee and Expense Award.  UM has no other or further liability for the attorneys' fees, costs, and/or expenses of Plaintiff, Class Counsel, or any member of the Settlement Class.

(b)     Within ten (10) business days after the Court approves any Fee and Expense Award, UM shall deliver to Class Counsel a sum equal to one-half (50%) of the Fee and Expense Award.

(c)     Within ten (10) business days after the Effective Date, UM shall deliver to Class Counsel a sum equal to the remaining one-half (50%) of the Fee and Expense Award.

(d)     In the event that the settlement or this Agreement is terminated or the Fee and Expense Award is reversed or modified by a court of competent jurisdiction, Class Counsel shall, within ten (10) business days of receiving notice of such termination, reversal, or modification, refund to UM any portion of the Fee and Expense Award already paid by UM to Class Counsel, plus interest thereon at the rate of interest established for judgments under federal law.  Class Counsel, as a condition of receiving money pursuant to the Fee and Expense Award, agrees he is subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this Paragraph.

6.     Class Representative's Incentive Award.

(a)     Subject to approval by the Court, UM agrees to not oppose an application by Plaintiff for an incentive award to Plaintiff in an amount not to exceed $1,500.00 for her services as Class Representative.

(b)     Within ten (10) business days after the Effective Date, UM shall deliver to Class Counsel the amount of funds ordered by the Court as an incentive award for the Class Representative, not to exceed $1,500.00.

7.     Taxes.

Each recipient of any monies paid in accordance with this Agreement is responsible for any taxes associated with the monies received by that recipient, including, but not limited to, any income taxes.

8.     Settlement Trust Account and Schedule of Deposits.

A Settlement Trust Account shall be created to hold the proceeds of this settlement as follows:

(a)     Prior to a hearing on preliminary approval of this settlement, UM shall retain and identify a Claims Administrator, which shall establish the Settlement Trust Account with a bank to receive and hold the payments discussed in this Paragraph and shall notify UM of the information necessary to make deposits to that account pursuant to and subject to the terms of this Agreement.

(b)     Within ten (10) business days after the Court grants preliminary approval of this settlement, UM shall deliver to the Settlement Trust Account the funds necessary to pay the notice and administrative costs ("Notice Costs").  The Claims Administrator may then withdraw those funds from the Settlement Trust Account to pay for Notice Costs.  UM's obligation to pay the Notice Costs following preliminary approval of this settlement is unconditional and does not depend upon the Final Approval by the Court of this settlement.

(c)     Within ten (10) business days after (i) the expiration of the Claim Period, (ii) the Parties notify the Settlement Administrator of their agreed resolution of any claims objected to by UM as described in Paragraph 9 of this Agreement, and (iii) the Parties notify the Settlement Administrator of the Umpire's resolution of any claims objected to by UM as described in Paragraph 9 of this Agreement, UM shall deliver to the Settlement Trust Account the funds

necessary to pay the valid claims made by members of the Settlement Class. In no event shall the funds necessary to pay valid claims exceed $100,000.00. The Claims Administrator shall then use the funds deposited by UM in the Settlement Trust Account to pay each claimant that made a valid claim, as determined by the procedure established in Paragraph 9 of this Agreement. However, if the aggregate total of all valid claims exceeds $100,000.00, the amount of money to be paid for each valid claim shall be reduced on a pro rata basis, such that UM will not pay more than $100,000.00 for all valid claims.

(d)     In no event shall the Settlement Administrator pay any claim before the Effective Date of this Agreement.

(e)     In the event that the Court denies Final Approval of this settlement or its Order of Final Approval and Final Judgment is denied finality for any reason, the funds within the Settlement Trust Account, except any funds necessary to pay Notice Costs, plus any interest actually earned or accrued on those funds, shall be paid to UM.

9.     Claim Process.

A member of the Settlement Class who complies with the claim process set forth in this Paragraph shall be eligible for monetary compensation from the Settlement Trust Account.

(a)     A member of the Settlement Class who proves, pursuant to the procedure set forth in this Paragraph, that he or she has sustained a monetary loss caused by the Incident shall be entitled to full compensation for that monetary loss, up to a maximum of $500.00. However, if the aggregate total of all valid claims exceeds $100,000.00, the amount of money to be paid on each valid claim shall be reduced on a pro rata basis, such that UM will not pay more than $100,000.00.

(b)     A member of the Settlement Class who wishes to make a claim for a monetary loss caused by the Incident shall submit to the Claim Administrator by mail, with a copy by mail to Class Counsel and Defendant's Counsel, a Claim Form (in all material respects in the form annexed hereto as Exhibit C) that includes the following information and documents:

(i)     The claimant's name;

(ii)     The claimant's current address;

(iii)     The name and address of any legal counsel representing or assisting the claimant in making his or her claim;

(iv)     Documents prepared or generated by a third party (not the claimant or his or her agents or representatives) establishing (1) a monetary loss incurred by the claimant and (2) the specific amount of that monetary loss; and

(v)     A sworn statement from the claimant, under penalties of perjury, that:

(A)     describes the claimed monetary loss, including (1) the amount of the monetary loss, (2) when the monetary loss occurred, (3) the general nature of the monetary loss (*e.g.*, tax refund fraud or credit card fraud), and (4) how the claimant discovered the monetary loss;

(B)     states the specific facts and circumstances that cause the claimant to reasonably believe that the claimed monetary loss was caused by the Incident; and

(C)     states the claimed monetary loss is a real and actual out-of-pocket monetary loss that has not been reimbursed or waived, such that the claimant now has less money than he or she would have had but for the Incident.

(c)     Members of the Settlement Class have one hundred and twenty (120) calendar days following Final Approval of this settlement to file a claim ("Claim Period"). The claim and its supporting materials must be postmarked within the Claim Period. No claim or supporting materials postmarked after the conclusion of the Claim Period shall be considered for payment.

(d)     The Claims Administrator shall determine, in the first instance, whether a member of the Settlement Class has submitted a timely and valid claim for a monetary loss.

(i)     A valid claim is one submitted by a member of the Settlement Class that satisfies the requirements of Paragraph 9(b), and a timely claim is one submitted by a member of the Settlement Class that satisfies the requirements of Paragraph 9(c).

(ii)    The Claims Administrator shall make this determination based on the documents and sworn statement submitted by a claimant and the timeframe in which it receives the claim.

(iii)   At the conclusion of the Claims Period, and after the Claims Administrator has determined whether the submitted claims are timely and valid, the Claims Administrator shall provide notice to Class Counsel and Defendant's Counsel of its determination on each submitted claim.

(iv)    Within fifteen (15) business days after receipt of the notice described in Paragraph 9(d)(iii), UM may challenge any determination by the Claims Administrator that a submitted claim is timely and valid by serving a written objection to the challenged claim on the Claims Administrator and Class Counsel.   Any claim determined to be timely and valid by the Claims Administrator and which is not timely objected to by UM shall be paid by the Claims Administrator pursuant to Paragraph 8 of this Agreement.

(v)     UM and Class Counsel shall attempt, in good faith, to resolve any objection served by UM under Paragraph 9(d)(iv) within ten (10) business days of service of the objection.   If UM and Class Counsel agree that a claim challenged

by UM is not timely or is not valid, UM and Class Counsel shall advise the Claims Administrator that the claim is invalid and shall not be paid.

(vi)     If UM and Class Counsel cannot agree on whether a claim objected to by UM is timely or valid within ten (10) business days of service of the objection, such dispute shall be resolved by the Umpire as follows:

(A)     Ten (10) business days after the Parties conclude the timeliness or validity of a claim must be resolved by the Umpire, the Parties shall serve on the Umpire a document listing all disputed claims.

(B)     Ten (10) business days after the Parties identify the disputed claims, Class Counsel shall provide the Umpire copies of all materials submitted by each claimant in support of his or her disputed claim. At that time, UM or Class Counsel may also, but are not required to, provide a written statement to the Umpire stating the reasons why they believe the claim should or should not be paid.

(C)     The Umpire shall review the materials provided to him pursuant to Paragraph 9(d)(v)(B), and only those materials, and determine whether he believes the challenged claim is valid under this Agreement. The Umpire shall provide his determinations in writing to the Parties, stating as to each challenged claim only whether the claim should be paid as timely and valid or should not be paid as untimely or invalid. The Umpire's determination is final and conclusive, with no appellate or review rights by UM, Class Counsel, the Class Representative, or members of the Settlement Class. The Parties will provide a copy of the Umpire's conclusive determinations to the Claims Administrator.

(D)     UM shall pay the Umpire for his time spent pursuant to Paragraph 9(d)(v)(C) at a rate of $480.00 per hour. In resolving challenged claims, the Umpire shall be paid for one hour of time reviewing this Agreement and other relevant materials needed to make his decisions and shall be paid for one-quarter hour (15 minutes) of time for each challenged claim he reviews and resolves.

(e)     Except for the Notice Costs, none of the funds identified in this Paragraph 9 shall be disbursed unless and until the Claim Period has expired and it is determined that UM's Option, as set forth in Paragraph 17(a) hereof, will not be invoked.

10.     Dispute Resolution.

Once the Parties and their counsel execute this Agreement, the Court will resolve any and all disputes that arise as to the interpretation or enforcement of this Agreement. All Parties and members of the Settlement Class submit to the continuing jurisdiction of the Court for purposes of implementing and enforcing the settlement.

11.     Publicity.

Unless otherwise agreed in writing, Plaintiff and Class Counsel shall not make any statements concerning this matter to the media or any other third parties, including but not limited to publicizing this settlement, sending out press releases, or otherwise contacting reporters or other members of the media regarding this settlement or its terms. To the extent the UM wishes to issue a media statement, Plaintiff and Class Counsel shall cooperate. This Paragraph does not preclude appropriate notice by publication, if any, and does not preclude Class Counsel from advising any member of the Settlement Class.

12.    Cooperation and Approvals.

(a)    The Parties and their counsel will cooperate in obtaining the Court's approval of this Agreement and in preparing and executing all documents relating thereto.

(b)    Within ten (10) business days of the execution of this Agreement by the Parties and their counsel, Class Counsel shall file a motion with the Court to enter the Preliminary Approval Order in the form annexed hereto as Exhibit A, which includes certification of the Settlement Class for settlement purposes only. UM shall not oppose that motion and shall cooperate with Class Counsel as necessary to obtain preliminary approval of this settlement.

(c)    Following preliminary approval of this Agreement by the Court, Class Counsel shall file a motion with the Court to enter the Order of Final Approval and Final Judgment substantially in the form annexed hereto as Exhibit B. UM shall not oppose that motion and shall cooperate with Class Counsel as necessary to obtain final approval of this settlement.

(d)    The Parties and their counsel will work together in good faith to effectuate reliable and accurate claims administration.

13.    Notice to the Settlement Class.

(a)    The Parties have agreed that the Notice Costs, including the cost of notice to members of the Settlement Class and the costs of claims administration, shall be paid by UM. It is expressly understood and agreed that neither Class Counsel nor members of the Settlement Class shall be responsible for any of these fees, costs, or expenses.

(b)    Notice of this settlement shall be provided to members of the Settlement Class. Notice will be provided by direct U.S. mail and shall be in a postcard format substantially in the form annexed hereto as Exhibit D. Notice shall be mailed to members of the Settlement Class within 45 days following preliminary approval of this Agreement by the Court. A longer form of notice shall be available to members of the Settlement Class, substantially in the form annexed hereto as Exhibit E, at a dedicated website created and maintained by the Claims Administrator, which website also shall host all pleadings in the Action and this Agreement. In addition, the Claims Administrator shall provide a copy of this Agreement, the longer form of notice, and requested pleadings to members of the Settlement Class upon written request.

(c)    The notice sent to members of the Settlement Class regarding this settlement, including the short and long form notices described in Paragraph 13(b) of this Agreement, is subject to approval by the Court as satisfying the adequacy and due process requirements of Rule 23 of the Federal Rules of Civil Procedure.

14.     Objection and Opt Out Period.

The deadline for members of the Settlement Class to object to the settlement or to opt out of the Settlement Class (the "Objection and Opt Out Period") shall be (a) sixty (60) days from the date of mailing of the postcard notice described in Paragraph 13(b) of this Agreement and (b) forty-five (45) days before the Fairness Hearing.

15.     Release.

The Releasing Parties hereby release the Released Parties from all Settled Claims as follows:

(a)     Pursuant to the Order of Final Approval and Final Judgment, upon the Effective Date of this Agreement, the Class Representative and members of the Settlement Class, on behalf of themselves and their heirs, executors, administrators, attorneys, agents, successors, and assigns shall be deemed to have, and by operation of the Order of Final Approval and Final Judgment shall have, with respect to each and every Settled Claim, fully, finally, and forever released, relinquished, and discharged the Released Parties of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind whether known or unknown, whether asserted or unasserted in the Action (whether against UM or any of the Released Parties), arising from, relating to, or in connection with the alleged facts, circumstances, and occurrences underlying the allegations in the Action, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, jurisprudence or other law, whether federal, state, or local, or on any grounds whatsoever, from the beginning of time and forever thereafter.  The Class Representative and members of the Settlement Class, on behalf of themselves and their heirs, executors, administrators, attorneys, agents, successors, and assigns shall forever be enjoined from prosecuting any Settled Claims against any of the Released Parties.  This release includes any claim that UM or its document, record, and information storage and management vendors, associates, or business associates did not adequately safeguard the Protected Health Information or other personally identifiable information of members of the Settlement Class or timely notify the members of the Settlement Class of the Incident.  The Released Parties, including, but not limited to, UM's document, record, and information storage and management vendors, associates, or business associates are express beneficiaries of this release and have the right and authority to enforce the release.  Such release and bar from prosecution shall be effective whether or not such member of the Settlement Class submits a claim for monetary relief pursuant to this Agreement.

(b)     Plaintiff and members of the Settlement Class may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims, or the law applicable to such claims may change.  Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he or she shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed in this Paragraph and in this Agreement.  Further, each of those individuals agrees and acknowledges that he or she shall be bound by this settlement, including by the releases contained in this Paragraph and in this Agreement, and that all of their

claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden, without regard to subsequent discovery of different or additional facts and subsequent changes in the law, and even if he or she never receives actual notice of the settlement, never submits a claim, or never receives a distribution of funds from the settlement.

(c)     Pursuant to the Order of Final Approval and Final Judgment, upon the Effective Date of this Agreement, the Class Representative, on behalf of herself, the Settlement Class, and Class Counsel shall take all steps necessary to dismiss all claims pending in the Action with prejudice.

(d)     The definition of Settled Claims shall not impair or restrict the rights of the Parties to enforce the settlement set forth in this Agreement.

16.     <u>Binding Agreement.</u>

This Agreement becomes the Parties' binding agreement when executed by all Parties and their counsel.

17.     <u>Termination of Settlement.</u>

(a)     UM, in its sole and absolute discretion, has the option to withdraw and terminate this settlement in the event that the number of potential Settlement Class members who would otherwise be entitled to participate as members of the Settlement Class, but who timely and validly request exclusion, equals or exceeds one hundred and thirty (130) in number.

(b)     This settlement may be terminated by either Plaintiff or UM by providing written notice to counsel for the opposing Party and the Court within ten (10) business days after any of the following occurrences:

(i)     The Court denies certification of the Settlement Class or materially changes or alters the composition of the Settlement Class in any way not acceptable to Plaintiff or UM, in their sole discretion;

(ii)     The Court denies the motion for entry of the Preliminary Approval Order;

(iii)     The Court denies the motion for entry of the Order of Final Approval and Final Judgment;

(iv)     The Court modifies, amends, incorporates into, or deletes or strikes from the Preliminary Approval Order or Order of Final Approval and Final Judgment any provision which a Party in good faith regards as material to this settlement; or

(v)     Any court makes any order precluding Plaintiff or UM from proceeding, in whole or in part, with the settlement.

(c)     In the event of a termination in accordance with the provisions of this Paragraph:

Page 12 of 16

(i)     The Parties agree to file any motions necessary to reinstate the Settled Claims and resume the Action as to the Settled Claims;

(ii)    The settlement and this Agreement shall be null and void, of no further effect, and inadmissible as evidence in any civil action or proceeding;

(iii)   Any certification, conditional or otherwise, of the Settlement Class by the Court will be vacated;

(iv)    The Parties will be returned to their pre-settlement positions with respect to all facets of the Action, including without limitation with respect to the appropriateness of class certification, as if the settlement had not been entered into;

(v)     Neither the settlement terms nor any publicly disseminated information regarding the settlement, including without limitation the notices, court filings, orders, and public statements relating to the settlement, may thereafter be used as evidence for any purpose whatsoever; and

(vi)    The fact of, and any documents, findings, decisions, or orders relating to, any failure of a court to approve the settlement or any modification or amendment of the settlement by a court, as well as the fact and contents of any objections which may have been filed to the settlement, may not be used as evidence for any purpose whatsoever.

(d)     Nothing in this Paragraph is intended or will be construed to limit the Parties' right to use or to offer the settlement in evidence in any action or proceeding in any court or other tribunal to enforce or implement its terms, to support or defend the settlement, including on any appeal, or to enforce or assert a claim or defense of res judicata, collateral estoppel, claim or issue preclusion, settlement, release, merger and bar, or any similar claim or defense against a member of the Settlement Class.

18.    UM's Denial of Wrongdoing and Liability.

UM enters into this Agreement solely to avoid the continuing additional expense, inconvenience, and distraction of this burdensome litigation, and to avoid the risks inherent in a complex case like this Action. By doing so, UM desires to settle and compromise all claims of the Settlement Class for damages or other relief, to terminate the Action, and to put to rest forever all of the Settled Claims.

UM denies each and every allegation of liability and wrongdoing made against it in the Action. UM also denies the allegations that the Class Representative or any other member of the Settlement Class has suffered damages or that the Class Representative or any other member of the Settlement Class was harmed by the conduct alleged in the Action. UM does not agree that certification of a class in this Action is appropriate or authorized under law, other than for purposes of this Agreement. This Agreement shall not be deemed evidence of an admission or concession on the part of UM with respect to: (a) any alleged fault, liability, or wrongdoing; (b) any claim for damages or other relief, including but not limited to recovery of damages,

prejudgment interest, post-judgment interest, attorneys' fees, or litigation expenses; or (c) any infirmity in the defenses that UM has or would have asserted. Any stipulation or admission by UM contained herein is made for settlement purposes only. In the event this Agreement is not finally approved, nothing contained herein shall be construed as a waiver by UM of its contention that class certification is not appropriate or is contrary to law in this Action or any other case or proceeding.

      19.    Class Action Fairness Act Notice.

UM shall be responsible for serving the required notification on the appropriate regulators pursuant to 28 U.S.C. § 1715. The Parties agree to cooperate and use their best efforts to ensure that the Court does not enter Final Approval of this settlement until at least ninety (90) days after UM serves such notification.

      20.    Venue.

The Parties agree that venue for purposes of obtaining preliminary and final Court approval shall be with the United States District Court for the Southern District of Florida, Miami Division.

## MISCELLANEOUS PROVISIONS

      21.    The Parties agree that the amounts paid and the other terms of this Agreement were negotiated at arm's length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

      22.    This Agreement may not be modified or amended, nor may any of its provisions be waived except by a writing signed by Class Counsel (on behalf of Class Representative and all members of the Settlement Class) and by UM, or by their successors-in-interest.

      23.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

      24.    This Agreement is the Parties' entire agreement concerning the settlement of the Action, and no representations, warranties, or inducements have been made by any Party hereto concerning this Agreement other than those contained in this Agreement. The Deal Points document signed by the Parties' counsel on June 2, 2014 has been merged into this Agreement, and if any conflicts arise between the provisions of this Agreement and the Deal Points document, the provisions of this Agreement shall control.

      25.    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

      26.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation,

partnership, or other entity into which or with which any Party hereto may merge, consolidate, or reorganize.

27.     The construction, interpretation, operation, effect, and validity of this Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Florida without regard to conflicts of laws, except to the extent, if any, that federal law requires that federal law governs.

28.     This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

29.     All counsel and any other person executing this Agreement and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effect its terms.

30.     Should any one or more of the provisions of this Agreement be determined to be illegal, invalid, or unenforceable, all of the remaining provisions shall be given effect separately therefrom and shall not be affected.

31.     <u>Signatures:</u>

The following agree to this settlement:

**The Class Representative and Settlement Class**                    **University of Miami**

By: _____          By: _____
Josh Carsten

Dated: 7/29/14                        Dated: Susan R. Montes, CPPO, C.P.M.
                                             Chief Procurement Officer
**Counsel for the Class Representative and**          **Counsel for University of Miami**
**the Settlement Class**

By: _____          By: _____
John Allen Yanchunis, Sr.                 Alfred J. Saikali
Email: jyanchunis@forthepeople.com        Email: asaikali@shb.com
Morgan & Morgan Complex Litigation        Shook Hardy & Bacon, LLP
Group                                     201 S. Biscayne Blvd., Suite 3200
201 N. Franklin Street, 7th Floor         Miami, Florida 33131
Tampa, FL 33602                           Telephone: (305) 358-5171

Telephone:  (813) 223-5505
Facsimile:  (813) 223-5402

Facsimile:  (305) 358-7470

Dated:_____7/29/2014_____

Dated:___7/29/14_____

.

# SETTLEMENT AGREEMENT

# EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JOAN CARSTEN, individually, and on
behalf of all others similarly situated,

CASE NO: 1:14-cv-20497-KMW

*Plaintiff,*

v.

UNIVERSITY OF MIAMI, a Florida not-
for-profit corporation ,

*Defendant.*

**[PROPOSED] ORDER PRELIMINARILY
APPROVING CLASS ACTION
SETTLEMENT, CONDITIONALLY
CERTIFYING A CLASS AND GRANTING
OTHER RELIEF**

The Plaintiff in this class action, without opposition from Defendant, seeks from the
Court an Order preliminarily certifying a class for settlement purposes, appointing Plaintiff as the
class representative, appointing lead counsel for the class, directing the issuance of class notice,
and scheduling a fairness hearing. Having read the papers in support of the request for an Order
preliminarily certifying a class for settlement purposes, the Court makes the following findings
and issues the following relief:

### Background

Plaintiff commenced this putative class action on February 10, 2014 by the filing of a
complaint against University of Miami (D.E. 1), which Plaintiff amended on March 7, 2014
(D.E. 5). On March 26, 2014, Defendant University of Miami filed its Motion to Dismiss
Amended Complaint for lack of standing, and for failure to state a claim (D.E. 6). Plaintiff filed
her response in opposition on April 28, 2014 (D.E. 11), to which Defendant replied on May 8,
2014 (D.E. 12).

The Complaint seeks monetary, declaratory and injunctive relief on behalf of Plaintiff,
individually, and a putative class of former and present patients of University of Miami Miller

School of Medicine. Plaintiff seeks to certify a class of persons pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3). Defendant contests liability for the claims asserted in the Complaint and Amended Complaint.

The parties began exploring resolution of Plaintiff's claims on a class-wide basis. These discussions were prompted by the parties' desire to avoid the expense, uncertainties and the burden of protracted litigation, and to put to rest any and all claims or causes of actions that have been, or could have been, asserted against Defendant University of Miami arising out of the document storage incident discovered in 2013.

In furtherance of these settlement discussions, the parties took a number of steps. *First,* Plaintiff conducted extensive (albeit informal) discovery, Defendant produced to Plaintiff documents relating to the document storage incident and the steps it took and changes it made after the discovery of the document storage incident. Defendant also produced additional documents that Plaintiff requested, and answered additional specific questions posed by Plaintiff directed at the integral issues in this case.

*Second,* the parties jointly retained a mediator, Brian F. Spector, a highly skilled and experienced mediator with a proven track record for resolving complex disputes including class litigation, to mediate their settlement discussions.

*Next,* the parties conducted a mediation session on June 2, 2014 to explore settlement. The parties exchanged offers and counteroffers and negotiated the points of each vigorously. This mediation resulted in a settlement now presently before this Court for consideration.

Following this mediation session, the parties turned to the task of memorializing the terms of the settlement in a Settlement Agreement, along with an accompanying class notice and claim form.

In the Settlement Agreement, the parties agreed to a settlement of this action that would involve the certification, for settlement purposes only, of a class of persons, subject to the approval and determination of the Court as to the fairness, reasonableness and adequacy of the settlement, which, if approved, will result in final certification of the Settlement Class and dismissal of the action with prejudice.

## Findings

Upon reviewing the Settlement Agreement and the Amended Complaint in this matter, and the matter having come before the Court, based on the foregoing, the Court's proceedings and the respective applications of the parties, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

**Jurisdiction.** This Court has personal jurisdiction over the Parties and has subject matter jurisdiction over this action, including jurisdiction to preliminarily approve the proposed settlement and conditionally certify a class for settlement purposes.

**Class Representatives and Lead Counsel.** Plaintiff Joan Carsten is designated as representative of the Settlement Class, as defined below, for settlement purposes only. John A. Yanchunis of the law firm of Morgan & Morgan Complex Litigation Group is hereby designated as Class Counsel for the Settlement Class, for settlement purposes only.

**Class Findings.** For purposes of the settlement of this action, the Court preliminarily finds that the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Southern District of Florida have been met in that:

The Settlement Class (as defined below) consists of 13,319 individuals to whom notice was sent by the University of Miami Miller School of Medicine as a result of Defendant's

discovery that documents transferred to its off-site storage vendor could not be located in 2013 (the "document storage incident"). The Settlement Class is ascertainable on the basis of the records of University of Miami and other objective criteria, and members of the Settlement Class are so numerous that it is impracticable to bring all members before the Court.

The commonality requirement is satisfied when members of a proposed class share at least one common factual or legal issue that is capable of common resolution. Here, Plaintiff has alleged numerous questions of fact and law common to the Class, including, among others:

a.    Whether Defendant failed to implement and maintain commercially reasonable procedures to ensure the security of protected health information of Plaintiff and members of the Settlement Class;

b.    Whether Defendant failed to adequately secure protected health information stored with its off-site vendor;

d.    Whether Defendant acted negligently in failing to implement and maintain commercially reasonable procedures to secure the protected health information of Plaintiff and members of the Settlement Class;

e.    Whether Defendant acted negligently in delaying or failing to inform Plaintiff and members of the Settlement Class Members of the document storage incident;

f.    Whether Defendant's conduct constitutes negligence;

g.    Whether Defendant's conduct was unfair, deceptive, and/or unconscionable;

i.    Whether Plaintiff and members of the Settlement Class are entitled to injunctive and declaratory relief;

J.    Whether Plaintiff and members of the Settlement Class have sustained monetary loss and the proper measure of that loss; and

k.      Whether Plaintiff and members of the Settlement Class have sustained consequential loss, and, if so, to what measure.

Considering the allegations of the Amended Complaint, the Court preliminarily finds that, for purposes of this settlement only, these common questions of fact and law predominate over questions of fact and law affecting only individual members of the Settlement Class.

Based on Plaintiff's allegations in the Amended Complaint, and for purposes of this settlement only, the Court preliminarily finds that the claims of the representative Plaintiff are typical of the claims of the Settlement Class, and that the representative Plaintiff will fairly and adequately protect the interests of the Settlement Class, in that: (1) the interests of the named Plaintiff and the nature of her alleged claims are consistent with those of all members of the Settlement Class; (2) there appear to be no conflicts between or among the named Plaintiff and members of the Settlement Class; (3) the named Plaintiff has been and appears to be capable of continuing to be an active participant in both the prosecution of and the negotiations to settle this action; and (4) the named Plaintiff and members of the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complex class actions.

The Court preliminarily finds that, for purposes of this settlement only, a resolution of the action in the manner proposed by the Settlement Agreement is superior to other available methods for a fair and efficient adjudication of this action. The proposed resolution of this action involves both monetary and equitable relief for members of the Settlement Class.

The Court also notes that because this action is being settled, rather than litigated, the Court need not consider the manageability issues that might otherwise be presented by litigation

of a nationwide class action involving these issues. *Amchem Prods. v. Windsor,* 521 U.S. 591, 619 117 S. Ct. 2231, 2248 (1997).

In making these preliminary findings, the Court has considered, among other factors: (1) the interests of members of the Settlement Class in individually controlling the prosecution or defense of separate actions; (2) the impracticability or inefficiency of prosecuting or defending separate actions; (3) the extent and nature of any litigation concerning these claims already commenced; and (4) the desirability of concentrating the litigation of the claims in a particular forum.

**Preliminary Class Certification for Settlement Purposes.** Based on the foregoing findings, and for settlement purposes only, the Court defines the Settlement Class to consist of:

> Those patients of the University of Miami Miller School of Medicine whose personal health information was contained within documents stored with a document storage vendor that could not be located in 2013.

> Defendant is excluded from the Class as well as any entity in which the Defendant has a controlling interest, along with Defendant's legal representatives, officers, directors, assignees and successors. Also excluded from the Class is anyone who has waived or released any claims against the University of Miami regarding the Incident described in the Settlement Agreement, as well as any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons.

The Court finds that, for the sole purpose of settlement, and without an adjudication of the merits, the Settlement Class is sufficiently well-defined and cohesive, and the proposed settlement, on the record thus far produced, seems adequate, to warrant sending notice of the action and the proposed settlement to the Settlement Class.

**Findings Regarding Proposed Settlement.** The Court finds that: (a) the proposed settlement resulted from extensive arms-length negotiations and was concluded only after

counsel for Plaintiff had engaged in extensive due diligence and (b) the proposed settlement evidenced by the Settlement Agreement is sufficient to warrant (i) preliminary certification of the Settlement Class for settlement purposes, (ii) notice thereof to the members of the Settlement Class, and (iii) a full hearing on the fairness of the settlement.

**Fairness Hearing.** A hearing (the "Fairness Hearing") will be held on_____, 2014 at _____, in courtroom _____ in the United States District Court for the Southern District of Florida, 400 North Miami Avenue, Miami, Florida 33128, before United States District Judge _____, to determine: (a) whether the action should be finally certified as a class action for settlement purposes; (b) whether the settlement of the class action should be approved as fair, reasonable and adequate; (c) whether the class action should be dismissed with prejudice pursuant to the terms of the parties' settlement; (d) whether members of the Settlement Class should be bound by the Release set forth in the parties' Settlement Agreement; (e) whether members of the Settlement Class should be subject to a permanent injunction that, *inter alia,* bars members of the Settlement Class from filing, commencing, prosecuting, intervening in, participating in (as Settlement Class Members or otherwise), or receiving any benefits from, any lawsuit, administrative or regulatory proceeding or order in any jurisdiction based on, or relating to, the claims (and the facts and circumstances related thereto) in this action and/or the released conduct as set forth in the parties' Settlement Agreement; (f) whether Plaintiff's application for an incentive fee award should be approved; and (g) whether the application of Plaintiff's counsel for an award of attorneys' fees and expenses should be approved. The parties' submissions in support of the settlement, a motion seeking an incentive award for the Class Representative and a motion seeking attorneys' fees and expenses  shall be filed with the Court at least 30 days prior to the Fairness Hearing.

**Notice by Mail.** Within 45 days of the date of this Order, Notice (the "Class Notice") shall be mailed, at University of Miami's expense, by first-class mail, postage prepaid, to the last known address of each member of the Settlement Class, as updated by the National Change of Address Database.

**Re-mailing of Notice.** The Court finds that the notice plan set forth in the previous paragraph is reasonably calculated under the circumstances to inform the Settlement Class of this settlement because the Settlement Class is well defined and its members' last-known addresses are in the possession of University of Miami and will be updated prior to mailing using the National Change of Address Database. The parties shall be required to mail additional rounds of Class Notices or to re-mail any Class Notices returned by the Postal Service with a forwarding address that is received by the Claims Administrator at least 30 days before the exclusion/objection deadline.

**Proof of Mailing.** At or before the Fairness Hearing, Defendant shall file with the Court a proof of mailing of the Class Notice.

**Findings Concerning Notice.** Having considered, among other factors, (a) the cost of giving notice by various methods, (b) the resources of the parties, (c) the stake of each member of the Settlement Class, and (d) the likelihood that significant numbers of members of the Settlement Class might desire to exclude themselves from the Settlement Class or appear individually, the Court finds that notice given in the form and manner provided above is the best practicable notice and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class: (1) of the pendency of this action; (2) of their right to exclude themselves from the proposed settlement; (3) that any judgment, whether favorable or not, will include all members of the Settlement Class who do not request exclusion; and (4) that any members of the

Settlement Class who does not request exclusion may object to the settlement and, if he or she desires, enter an appearance either personally or through counsel.

**Communications with Class Members**. Defendant may not be privy to or respond to inquiries between Class Counsel and members of the Settlement Class.

**Retention of Claims Administrator.** The Court authorizes Defendant to retain Epiq Systems, Inc. to help implement the terms of the proposed settlement and authorizes such administrator to mail the Class Notice and carry out such other responsibilities as are provided for in the Settlement Agreement.

**Exclusion from Class.** Any member who wishes to be excluded from the Settlement Class must send a written request for exclusion to the Clerk of the Court, by first-class mail, postage prepaid, to the address provided in the Class Notice. Any such exclusion request must be postmarked no later than 45 days before the date set for the Fairness Hearing in this Order. If the proposed settlement is approved, any member of the Settlement Class who has not submitted a timely, written request for exclusion from the Settlement Class shall be bound by all subsequent proceedings, orders and judgments in this action, even if he or she subsequently initiates litigation against Defendant encompassed by the release in the Settlement Agreement that relates to the claims and conduct released in the parties' settlement.

## Objections and Appearances

**Written Objections.** Any member of the Settlement Class who has not filed a timely, written request for exclusion from the Settlement Class and who complies with the requirements of this Order may object to any aspect of the proposed settlement and/or the award of attorneys' fees and expenses and plaintiff's incentive award, either on his or her own or through an attorney hired at his or her expense. Any member of the Settlement Class who wishes to object to the

proposed settlement must file with the Court and deliver to Class Counsel and counsel for Defendant a written statement of objection no later than 45 days before the date set for the Fairness Hearing in this Order. The written objections(s) must include: (1) a detailed statement of the objection(s), as well as the specific reasons, if any, for each objection, including any evidence and legal authority the objecting member of the Settlement Class wishes to bring to the Court's attention and any evidence the objecting member of the Settlement Class wishes to introduce in support of his/her objection(s); (2) the name, address and telephone number of the objecting member of the Settlement Class; (3) any other supporting papers, materials or briefs the objecting member of the Settlement Class wishes the Court to consider when reviewing the objection(s); and (4) a statement of whether the objecting member of the Settlement Class or his or her lawyer will appear at the Fairness Hearing.

Any member of the Settlement Class who retains an attorney to prepare the member's written objection and/or who intends to appear at the Fairness Hearing through counsel must, in addition to the requirements stated above do the following in the written objection: (1) set forth the attorney's experience with class actions, including the capacity in which the attorney participated in each class action (e.g., as plaintiffs', defendants' or objectors' counsel), and the outcome of each case; (2) if the attorney has previously represented objectors in a class action, then the attorney must detail the disposition or effect that any objection had on each class action case and how much the attorney was paid for the representation of each objector in each class action case; and (3) even if the member of the Settlement Class employs an attorney to prepare the written objection, the objecting member of the Settlement Class must sign the written objection personally as an attestation that he or she discussed the objection with his or her attorney and has fully reviewed the written objection. Any member of the Settlement Class who

files and serves a timely written objection, as described in this Order, may appear at the Fairness Hearing, either in person or through counsel hired at their expense who files the appropriate notice, to object to the fairness, reasonableness or adequacy of the Settlement Agreement, the proposed settlement, the award of attorneys' fees and expenses, or Plaintiff's incentive award.

Any objection that the member of the Settlement Class wishes the Court to consider shall be provided to each of the following:

> Clerk of the Court
> United States District Court for the Southern District of Florida
> Wilkie D. Ferguson, Jr. United States Courthouse
> 400 North Miami Avenue
> Miami, FL 33128
> **Re: Case No.: 1:14-cv-20497-KMW**

> John A. Yanchunis, Esq.
> Morgan & Morgan Complex Litigation Group
> 201 N. Franklin Street, 7th Floor
> Tampa, FL 33602
> **Lead Counsel for the Settlement Class**

> -and-

> Alfred J. Saikali
> Shook Hardy & Bacon, LLP
> 201 S. Biscayne Blvd., Suite 3200
> Miami, Florida 33131
> **Lead Counsel for Defendant University of Miami**

Any member of the Settlement Class who does not timely file and serve a written objection pursuant to the terms of this Order shall be deemed to have waived, and shall be foreclosed from raising any objection to the settlement, and any objection that is not timely made shall be barred.

**Exclusion from the Class.** All persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms

of the Settlement Agreement, the Judgment entered thereon, and all Orders entered by the Court in connection with the settlement set forth in the Settlement Agreement. All persons who submit valid and timely notice of their intent to be excluded from the Settlement Class shall neither receive any benefits nor be bound by the terms of the Settlement Agreement.

**Submission of Claim for Benefits.** Members of the Settlement Class who qualify for and wish to submit a claim for any benefit under the settlement as to which a claim is required shall do so in accordance with the requirements and procedures of the Settlement Agreement. All members of the Settlement Class who qualify for any benefit under the settlement as to which a claim is required but fail to submit a claim in accordance with the requirements and procedures of the Settlement Agreement shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, and the releases contained therein.

**Service of Papers.** Class Counsel and counsel for Defendant shall serve on each other and on all other parties who have filed notices of appearance, at or before the Fairness Hearing, any further documents in support of the proposed settlement, including responses to any papers filed by members of the Settlement Class. Class Counsel and counsel for Defendant shall promptly furnish to each other any and all objections or written requests for exclusion that may come into their possession, and Class Counsel shall file such objections and a list reflecting such requests for exclusion with the Court on or before the date of the Fairness Hearing.

**Termination of Settlement.** This Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (1) the proposed settlement is not finally approved by the Court, or if the Court's final approval of the proposed settlement is

reversed or vacated in any material respect on appeal; or (2) the proposed settlement is terminated in accordance with the Settlement Agreement or for any other reason. In such event, the proposed settlement shall become null and void and be of no further force and effect, and neither the Settlement nor the Court's orders, including this Order, shall be used or referred to for any purpose whatsoever.

**CAFA Compliance.** University of Miami shall comply with the obligation to give notice under 28 U.S.C. § 1715 in connection with the proposed settlement, and, pursuant to the Settlement Agreement, shall notify Settlement Class Counsel of its compliance.

**Use of Order.** This Order shall be of no force or effect if the settlement does not become final and shall not be construed or used as an admission, concession or declaration by or against Defendant of any fault, wrongdoing, breach or liability, or by or against Plaintiff or any member of the Settlement Class that their claims lack merit or that the relief requested in the Amended Complaint is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims it or they may have.

**Continuance of Hearing.** The Court reserves the right to continue the Fairness Hearing without further written notice to the Settlement Class, but will notify counsel for the parties and objectors who have made a timely appearance in these proceedings pursuant to the terms of this Order. Unless the Court specifically orders otherwise, any such continuance shall not be interpreted to expand the mailing or publication requirements set forth in this Order or to extend the filing or service deadlines set forth in this Order.

**Stay of Litigation Proceedings.** All discovery and other pretrial deadlines are stayed and suspended until further order of the Court.

**IT IS SO ORDERED.**

DONE AND ORDERED in Chambers at Miami, Florida, this ____day of _____

, 2014.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

# SETTLEMENT AGREEMENT

# EXHIBIT "B"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JOAN CARSTEN, individually, and on
behalf of all others similarly situated,

                          *Plaintiff,*

v.

UNIVERSITY OF MIAMI, a Florida not-
for-profit corporation ,

                          *Defendant.*

CASE NO:  1:14-cv-20497-KMW

## [PROPOSED ORDER] FINAL JUDGMENT CERTIFYING SETTLEMENT CLASS, APPROVING SETTLEMENT, AWARDING INCENTIVE FEES TO CLASS REPRESENTATIVE, AND AWARDING ATTORNEYS' FEES AND EXPENSES TO CLASS COUNSEL

This matter came before the Court on Plaintiff's Unopposed Motion for Final Order Certifying the Settlement Class, Approving the Settlement Agreement and granting Plaintiff's Motion for An Award of Attorneys' Fees and Expenses and Incentive Award to Class Representative and Memorandum of Points in Support Thereof. The "Settling Parties" consist of Class Representative, Joan Carsten ("Plaintiff" or "Class Representative") and Defendant, University of Miami ("Defendant").

On August 8, 2014, Plaintiff filed her Motion for Preliminary Approval asking the Court to approve a proposed Settlement Agreement and Release ("Settlement Agreement"). On_____

_____, the Court conditionally certified the Settlement Class and preliminarily approved the Settlement Agreement. Plaintiff now seeks final certification of the Settlement Class and final approval of the Settlement Agreement. The Class Representative also seeks approval of an incentive award to the Class Representative and attorney's fees, costs and expenses for Class

**Page 1 of 20**

Counsel, which Settling Defendant has agreed not to object up to the amount requested in the application. A Final Fairness hearing was held on all of these issues on _____

_____("Fairness Hearing").

The Court has considered information material to making this decision, including: (i) all motions, memoranda and papers filed in support of the Settlement Agreement; (ii) the declarations of the Class Representative, Class Counsel, the Director of the University of Miami Miller School of Medicine's Office of HIPAA Privacy and Security, and Mediator Brian F. Spector; and (iii) arguments of counsel for Plaintiff and counsel for Defendant.

For the reasons set forth below, the Court continues and makes final its certification of the Settlement Class, approves the Settlement Agreement, approves an incentive award to Class Representative in the amount of $1,500.00, and approves attorney's fees, costs and expenses to Plaintiffs' counsel in the amount of $90,000.00.  Being otherwise fully advised in the premises, the Court orders and adjudges as follows:

## I.   HISTORY OF THE LITIGATION

This case stems from a class action complaint that Plaintiff filed against Defendant, wherein Plaintiff alleged that Defendant lost certain highly confidential information of Plaintiff and class members in violation of their important privacy rights.

After mediation, Plaintiff reached a class-action settlement with Defendant that is the subject of this Order.

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.        CERTIFICATION OF THE SETTLEMENT CLASS

1.   "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Lipuma v. American*

*Express Co.,* 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting *Woodward v. NOR-AMChem. Co.,* 1996 WL 1063670 *14 (S.D. Ala.1996)); *see also Borcea v. Carnival Corp.,* 238 F.R.D. 664,671 (S.D. Fla. 2006). Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met. *Lipuma,* 406 F. Supp. 2d at 1314. The Court hereby makes final its prior conditional certification of the following Settlement Class in this action:

> Those patients of the University of Miami Miller School of Medicine whose protected health information was contained within documents stored with a document storage vendor that could not be located in 2013.

> Excluded from the Class are: anyone who has opted out/excluded themselves from the Settlement Class; anyone who has waived or released any claims against the University of Miami regarding the Incident described in the Settlement Agreement; Defendant, any entity in which the Defendant has a controlling interest, along with Defendant's legal representatives, officers, directors, assignees, and successors; and any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons.

The reasons for this Court's order follow below.

2.  Rule 23(a) of the Federal Rules of Civil Procedure has the following requirements for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). Courts often refer to these factors as numerosity, commonality, typicality, and adequacy. *See, e.g., Davis v. Coca-Cola Bottling Co.,* 516 F.3d 955, 966 (11th Cir. 2008).

### 1.  Numerosity

3.  The numerosity requirement under Rule 23(a)(l) requires "that the class is so

numerous that joinder is impracticable, not impossible." *Lipuma,* 406 F. Supp. 2d at 1314 (citing *Kreuzfeld, A.G. v. Carnehammar,* 138 F.R.D. 594, 599 (S.D. Fla. 1991)); *see also Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D. Fla. 1986) (explaining that the focus of the numerosity inquiry is not whether the number of proposed class members are "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical."). There is no definite standard as to the size of a given class. *Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001). As explained in *Evans v. US. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983), a plaintiff need not show the precise number of members of the class to substantiate numerosity: "[W]hile there is no fixed numerosity rule, 'generally less than 21 is inadequate, more than 40 is adequate, with numbers between varying according to other factors."' *Id (*quoting *Cox v. American Cast Iron Pipe Co.,*784 F.2d 1546, 1552 (11th Cir. 1986), *cert. denied,* 479 U.S. 883 (1986)).

4.     The Court finds that the Settlement Class is estimated to include 13,319 individuals. Declaration of Sharon A Budman. Under any standard, for purposes of settlement, the Court concludes that the numerosity requirement set forth in Rule 23(a)(1) is met in this case.

### 2.     Commonality

5.     The commonality inquiry requires that plaintiffs' claims raise "at least one" question of law or fact common to the members of the class. *Fabricant,* 202 F.R.D. at 313. Commonality will be satisfied where questions of law refer to standardized conduct by the defendants. *In re Amerifirst Sec. Litig.* 139 F.R.D. 423, 428 (S.D. Fla. 1991). Establishing commonality does not require complete identity of the plaintiffs' claims. *CV Reiz, Inc., v. Levy,* 144 F.R.D. 690, 696 (S.D. Fla. 1992). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common..." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1254 (11th Cir. 2004),

*cert. denied,* 543 U.S. I 081 (2005).

6.    In this case, for purposes of settlement, the Court finds that the Settlement Class members are commonly united because, at a minimum, Plaintiff has alleged common violations of their privacy rights and have claimed violation of the Florida Deceptive and Unfair Trade Practices Act. In the case presented, the Court notes that all members of the Settlement Class are entitled to the protection of their important privacy rights, and share a common legal remedy: substantive injunctive relief and damages. Therefore, for purposes of settlement, the Court concludes that there is legal and factual cohesiveness among Settlement Class members to satisfy the commonality requirement of Rule 23(a)(2).

### 3.    Typicality

7.    The typicality inquiry under Rule 23 (a)(3) requires the Court to determine that the claims of the class representative is "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite." *Fabricant,* 202 F.R.D. at 313 (citing *Kornberg v. Carnival Cruise Lines,* 741 F. 2d 1332, 1337 (11th Cir. 1984)). Typicality, however, does not mean that class representative's claims must be identical to the claims of class members. Rather, typically is satisfied where the interests of the named parties arise from the same course of conduct that give rise to the claims of the class they seek to represent and are based on the same legal or remedial theory. *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985); *Brinkerhoff v. Rockwell Int'l Corp.,* 83 F.R.D. 479, 480 (N.D. Tex. 1979) (typicality requires "that the claims or defenses of the class 'resemble' or 'exhibit the essential characteristics' of those of the representatives"). A plaintiff's claims are typical of the class "if they stem from the same event, practice, or course of conduct that forms the basis of the class

claims and are based upon the same legal or remedial theory." *Walco Investments, Inc.* v. *Thenen,* 168 F.R.D. 315, 326 (S.D. Fla. 1996).

8.    In this case, for purposes of settlement, the Court finds that Class Representative's claims are typical of the Settlement Class members. Class Representative and Settlement Class members share a common interest in ensuring the privacy of their information provided to Defendant. The crux of the allegations in this case is that Defendant did not adequately protect the security of the protected health information of Plaintiff and Settlement Class members. The Court notes that the injunctive relief sought by Class Representative would apply to the Settlement Class members equally. Moreover, Settlement Class members will be entitled to seek to recover damages for the type of monetary injury which they may have sustained. Thus, for purposes of settlement, the Court finds that Class Representative's interest in protecting the privacy of her protected health information is typical of the claims of the Settlement Class members.

### 4.    Adequacy of Representation.

9.    Rule 23 also requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). What constitutes adequacy is a question of fact that depends upon the circumstances of each case and is entrusted to the discretion of the trial court. *Kirkpatrick v. J* C. *Bradford & Co.*827 F.2d 718, 727 (11th Cir. 1987); *see also,* 7A CHARLES A. WRIGHT, ARTHUR R. MILLER AND MOSEY K. KANE, FED. PRACTICE & PROCEDURE § 1765, at 271 (1986). Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representatives have interests in common; and (2) class counsel are qualified, experienced, and generally able to conduct the litigation. *Kirkpatrick,* 827 F.2d at 726; *Griffin* v. *Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985); *Fabricant,* 202 F.R.D. at

314. The Supreme Court has held that a district court must determine that class representatives and class counsel are free from conflicts of interest with absent class members. *Amchem Products, Inc.* v. *Windsor,* 521 U.S. 591, 625-26 (1997). For purposes of settlement, the Court finds that the record well supports the adequacy requirements in this case.

### a.   Class Representative is Adequate

10.      Looking first to the Class Representative, for purposes of settlement, the Court finds that Joan Carsten has dutifully fulfilled her obligations. The Class Representative actively participated in this case for the benefit of the Settlement Class.      *See* Carsten Decl.   The undisputed evidence demonstrates that Ms. Carsten has shown her commitment to the claims she shares with the Settlement Class.   The Class Representative had significant involvement in all facets of the litigation, including the mediation negotiations that led to the proposed settlement. *Id.*

11. As to the Settlement Agreement, for purposes of settlement, the Court finds that the Class Representative understood the privacy issues at issue and was motivated to protect the privacy of the Settlement Class members and herself, through the proposed injunctive and monetary relief. The Court also notes that the Class Representative appreciated the terms, nature, and scope of the Settlement. *See* Yanchunis and Carsten  Decl. Ms. Carsten has sworn that the Settlement Agreement is a benefit to the Settlement Class as it provides important privacy protection. *Id.* She further testified that her motivation in participating and undertaking this case was to change the behavior of Defendant, to seek damages for the class, and to protect the privacy interests of the Settlement Class. *Id.*

12. Thus, for purposes of settlement, the Court finds that the Class Representative is not being treated differently than the Settlement Class members. Although the Class Representative

seeks an incentive award, the incentive award is not to compensate the Class Representatives for damages but to reward her for her efforts on behalf of the Settlement Class. The Court finds it significant that the incentive awards were negotiated only after the terms of the settlement were reached among the Settling Parties. *See* Spector Decl.; Yanchunis Decl.

### b.  Class Counsel is Adequate

13.  The Court now turns to Class Counsel's adequacy. The Class Counsel attorneys have extensive experience in complex litigation and class actions. *See* Declarations of Class Counsel. The Court has observed them exhibit extensive knowledge of the law applicable to the Settlement Class members' claims. The Court finds that Class Counsel has expended substantial effort to achieve the results proposed in the Settlement Agreement. The quality of the legal work has been excellent.

14.  The Court notes that the record reflects Class Counsel's commitment to this case and the Settlement Class. Class Counsel engaged in pre-suit investigation and informal discovery practice. Yanchunis Decl.  Class Counsel reviewed documents produced during the litigation. The Court understands that Class Counsel prepared for and took the deposition of the corporate representative of Defendant on topics material to this case.  The Court also observed throughout the litigation, including the extensive motion practice, that Class Counsel has a true expertise in privacy issues. *See* Yanchunis Decl.

15.  The Court reviewed the declaration of the mediator and finds that during the mediation, Class Counsel participated in a face-to-face meeting and phone conferences with Defendant.   The mediator affirmed that the topics of incentive awards for the Class Representative and attorneys' fees for Class Counsel were not raised until after all of the material settlement terms were negotiated. *See* Spector Decl. These facts are undisputed by any contrary

evidence. As such, for purposes of settlement, the Court concludes that Class Counsel is adequate.

**5.     Class Certification under Rule 23(b)(3) is Appropriate**

16.    In addition to the requirements of Rule 23(a), a proposed class action must satisfy one of the subsections of Rule 23(b). In this case, certification was and is proper for purposes of settlement under Rule 23(b)(3). Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

17.    Pursuant to the aforementioned standards, for purposes of settlement, the Court determines that certification of a Settlement Class under Rule 23(b)(3) was and is appropriate in this case. For purposes of settlement, the Court finds that common questions of fact and law predominate over questions of fact and law affecting only individual members of the Class. A Class Settlement will ensure that funds are available to compensate injured Class Members. Rule 23(b)(3) also requires that the class action device be superior to other methods of adjudication. Factors the Court may consider are: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class. Any difficulties of management of the Class need not be considered in this settlement context. *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997); Sullivan v. DB Invs., Inc.*, 667 F.3D 273,302-303 (3d Cir. 2011) (holding that potential variances in different states' laws would

not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class ,as opposed to a litigated class). For purposes of settlement, the Court finds that a class action settlement is superior to other means of resolution because a settlement affording Settlement Class members an opportunity to receive compensation benefits all parties.

**B.       THE SETTLEMENT AGREEMENT**

18. Under Rule 23(e), the Court will approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Factors to consider in determining whether a settlement is fair, reasonable, and adequate include: "(1)the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). In considering whether the proposed settlement should be approved as fair, reasonable, and adequate, the Court considered these factors as well as the absence of any collusion and the judgment of experienced counsel for the parties. *Id; Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005).

19. Beginning with the likelihood of success at trial, the Court finds that Plaintiff's likelihood of success is not certain in this case; aside from the challenges to class certification, the issues of causation and damages were tremendous challenges. Absent settlement, an expensive and time consuming trial on the merits is the only way that these issues can be resolved. Thus, the Court concludes that because success at trial is not certain for Plaintiff, this factor weighs in favor of accepting the settlement.

20. "The second and third considerations of the *Bennett* test are easily combined." *Behrens,* 118 F.R.D. at 541. In terms of the range of possible recovery, the Florida Deceptive and Unfair Trade Practices Act provides for actual damages, and the settlement provides a mechanism, with limits, for class members to obtain monetary relief. Accordingly, the Court finds the proposed settlement is within the range of possible recovery.

21. As stated in the third *Bennett* factor, even a settlement point below the range of possible recovery may qualify as fair, adequate, and reasonable. *Bennett,* 737 F.2d at 986. In this case, the Court finds that the Settlement Agreement's injunctive relief requires Defendant to implement business changes with respect to its safeguarding of protected health information.

22. As to the fourth *Bennett* factor, the Court finds the complexity, expense, and duration of this litigation favors approval of the proposed settlement. As the record itself supports, this is a complex case and there are significant risks of continuing the litigation. Plaintiff has advanced a novel claim with little jurisprudence. Continued litigation could potentially have resulted in failure for the Plaintiff and Settlement Class.

23. The Court also acknowledges that all of the issues that have been litigated in this case have consumed time, money, and judicial resources. If the case were to continue, the Court believes that the Settling Parties would engage in continued motion practice, including the important issue of class certification, and appellate practice. Trial would have been long, complicated, expensive, and fraught with risk. Accordingly, even if Plaintiff was ultimately to prevail, the Settlement Class would only benefit after years of trial and appellate proceedings and the expenditure of significant expense by both sides. Moreover, the benefit obtained might not be any different than the important and significant relief being provided to Settlement Class members through this settlement. Thus, the Court finds that the Settlement Agreement provides

the Settlement Class with certainty of result and a high level of assurance regarding the protection of their private information. *See Lipuma,* 406 F. Supp. 2d at 1324 (approving settlement that would "'alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing.") (citation omitted). Therefore, the Court concludes that the fourth *Bennett* factor weighs in favor of the settlement's approval.

24. As to the fifth *Bennett* factor, the Court finds that the substance and amount of opposition to the settlement weighs in favor of the settlement's approval. No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.

25. As to the sixth *Bennett* factor, the Court finds that the Settling Parties have sufficiently explored both the factual and legal aspects of this case through contentious motion practice and discovery. The Settling Parties and the Court are well positioned and well-briefed to assess the strengths and weaknesses of this case and the benefits of the proposed settlement.

26. Importantly, the Court finds that there is no evidence of collusion. The Settling Parties negotiated the resolution of this case at arm's length. During that time, the Settling Parties submitted to mediation before Brian F. Spector. Mr. Spector "never witnessed or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial." Spector Decl.

27. Further the Court is personally aware of the professionalism and integrity of the Settling Parties' attorneys. Class Counsel has provided a sworn declaration that an agreement was reached only after considering such factors as: (1) the benefits to Plaintiff and the Settlement Class; (2) the strength of Plaintiff's case weighed against the settlement offer; (3) the attendant

risks and uncertainty of litigation; (4) the attendant risks and uncertainty of establishing liability and damages; (5) Defendant's vigorous defense of the litigation and continued denial of the claims; and (6) the desirability of consummating this Settlement Agreement promptly to safeguard the privacy and security of Plaintiff and the Settlement Class members' personal information. Based on all of these factors and the Court's personal observations, the Court concludes that there is no evidence of collusion here.

28.   Finally, this Settlement Agreement is supported by seasoned counsel for the Settling Parties. The Court finds that Plaintiff is represented by a highly respected attorney from a highly regarded law firm, and that Mr. Yanchunis has significant experience in class actions litigating issues relating to privacy. Similarly, Defendant is represented by lawyers from one of the most respected and experienced class-action defense law firms in the country, and Mr. Saikali and Mr. Rogers have significant experience in class action litigation and data security and privacy matters. The Court finds that the unanimous support of counsel for this settlement weighs in favor of its approval. Based on the foregoing, the Court concludes that the proposed settlement is fair, reasonable, and adequate.

## C.   NOTICE

29.   The Court finds that the notice sent to Settlement Class members satisfies due process. As described in the declaration of the Claims Administrator, it caused the Postcard Notice to be mailed via U.S. Mail to the last known mailing address of each reasonably identifiable Settlement Class member. The Claims Administrator received a data file with the names and addresses of Settlement Class members from University of Miami. It submitted those names and addresses to cross-reference with the National Change of Address database for updated address information. On _____, the Claims Administrator sent notice to _____

Settlement Class members. Only _____ of the notices were categorized as undeliverable.

30.   As of _____, the Claims Administrator received _____ unique visits to the web site created for the settlement and received ___ calls to the call center created for the settlement. As of _____, the Claims Administrator mailed _____ copies of the claim form to Settlement Class members and _____ copies of the long form notice to those who requested it in writing.

### D.   INCENTIVE AWARDS

31.   The Settling Parties have negotiated an incentive award of $1,500 for the Class Representative. For purposes of settlement, the Court finds that such an amount is reasonable and approves the Defendant's payment of an incentive award of $1,500 to the Class Representative. First, as discussed above, for purposes of settlement, the Court finds that the Class Representatives is adequate.  Ms. Carsten faithfully fulfilled her fiduciary obligations to the Settlement Class and was not motivated to do so by financial reward. She has been an active participant in all aspects of this time-consuming case and was committed to addressing a problem she believed was important. Moreover, she understood the tensions inherent in the case, the benefits and risks associated with continuing litigation, and the need to protect the rights of Settlement Class members.

32.   For purposes of settlement, the Court further finds that the incentive award is not tantamount to a payment for damages; rather the award represents remuneration for the services performed for the benefit of the Settlement Class and reflects the amount of time and effort spent by the Class Representative, the duration of the litigation, and the role to the Settlement Class in commencing the suit.   Finally, the Court notes that the record is clear that the Class Representative negotiated the settlement terms before there was a discussion of an incentive award to the Class Representative and all negotiations were free from fraud or collision.  The

evidence was established by the impartial mediator, Brian F. Spector, by the Class Representative, and the attorneys for the Class Representative. For purposes of settlement, the Court finds that the incentive award of $1,500 to the Class Representative for the significant work and responsibility that went into this case is fair and reasonable.

## E.     ATTORNEYS' FEES, COSTS AND EXPENSES

33. The Settling Parties agreed in the Settlement Agreement that Class Counsel would seek the Court's approval of an award of attorneys' fees, costs and other expenses of $90,000.00, in the aggregate, to be paid by Defendant. Defendant agreed further to not oppose such amount so long as the application approved by the Court did not exceed the amount of $90,000.00.

34. The Florida Deceptive and Unfair Trade Practices Act is a statute that permits an award of reasonable attorneys' fees and other litigation costs reasonably incurred to prevailing plaintiffs. "The court's order on attorney's fees must allow meaningful review-the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1304 (11th Cir. 1988)(citing *Adams v. Mathis,* 752 F.2d 553, 554 (11th Cir. 1985)). Even when there is a settlement, as in this case, "the district court has a supervisory role and ultimately must calculate and set the attorneys' fees award up to a maximum of the [negotiated] cap." *Dikeman v. Progressive Exp. Ins. Co.,* 312 Fed. Appx. 168, 172 n.3 (11th Cir. 2008). "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980) (internal citations omitted).

35. Having considered the *Johnson* factors and the evidence presented at the fairness hearing, for purposes of this settlement, the Court finds that the hours and hourly rates of Plaintiff's counsel provide a reasonable basis for calculating the lodestar in this case. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). In so finding, the Court notes that this case was novel, that it required significant legal effort and acumen from skilled and experienced counsel, and that counsel's performance in this case has been excellent in the face of stiff and ardent opposition.

36. Eleventh Circuit precedent has established that "exceptional" results-results that are "out of the ordinary, unusual, or rare"-may result in an enhancement of a fee above the lodestar. *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1302 (11th Cir. 1988). "Any enhancement begins with a finding that the results were exceptional." *Id.* at 1306. "Even if the court found the results obtained to be exceptional, no enhancement for these results would be justified unless the court also finds that class counsel's representation was superior to that which would have been expected considering the rates requested." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). In other words, in order to award attorney's fees in excess of the lodestar, the Court must find that "the quality of their representation far *exceeded what could reasonably be expected for the standard hourly rates* used to calculate the lodestar." *Kenny A. ex rel. Winn v. Perdue,* 547 F.3d 1319, 1324 (11th Cir. 2008) (Wilson, J., concurring) (emphasis in original).

37. According to the declarations of Class Counsel, they incurred $_____ in costs and expenses in litigating this matter. For purposes of settlement, the Court finds that the $_____ in costs and expenses are reasonable, and will be awarded as part of the $90,000.00 awarded to class counsel.

### III.  FINAL JUDGMENT AND ORDER

**NOW THEREFORE,** after consideration of all motions, memoranda in support, declarations, argument of counsel, and being otherwise duly advised in the premises, it is **ORDERED and ADJUDGED** as follows:

1.      Plaintiff's Motion for Entry of an Order Approving Defendant's Payment of Agreed Upon Incentive Awards to Class Representative and Attorney's Fees, Costs and Expenses **is GRANTED.** The Court awards $90,000.00 in attorneys' fees and costs, and an incentive award in the amount of $1,500 to Class Representative, Joan Carsten. Defendant shall pay the award of attorneys' fees and expenses to Class Counsel and incentive award to Class Representative in accordance with the terms of the Settlement Agreement.

2.      For purposes of this Final Judgment and Order, the Court adopts and incorporates the definitions and meanings of the defined terms set forth in the Parties' Settlement Agreement.

3.      Plaintiff's Motion for Final Certification of Settlement Class, Final Approval of Class Action Settlement, and Entry of Final Judgment and Order **is GRANTED.**

4.      As of the date this judgment becomes final (meaning that the time for appeal has expired with no appeal taken, all appeals are resolved and none are left pending, or this judgment is affirmed after completion of the appellate process), the Class Representative and the Settlement Class members, excepting only those individuals, if any, who effectively excluded themselves from the settlement in accordance with the terms of the class notice, shall be forever barred from bringing or presenting any action or proceeding against any of the parties released by the terms of the Settlement Agreement that involve or assert any of the claims released by that Settlement Agreement. The Class Representative and Settlement Class members, excepting only those individuals, if any, who effectively excluded themselves from the settlement in accordance with the terms of the class notice, shall be deemed to have released and forever discharged the

Released Parties, as defined in the Settlement Agreement, from all claims released by the Settlement Agreement. All relief not expressly granted to the Settlement Class members through the Settlement Agreement is denied. The Settled Claims, as defined in the Settlement Agreement, are hereby compromised, settled, released, discharged, and dismissed as against the Released Parties on the merits and with prejudice by virtue of the proceedings herein and this Order of Final Approval and Final Judgment.

5. The Amended Complaint in this action is hereby **DISMISSED WITH PREJUDICE**.

6. The Court expressly approves each and every term contained in the Parties' Settlement Agreement. Without limiting the foregoing, the Court specifically approves the claims process and procedure set forth in the Settlement Agreement.

7. The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Settlement Agreement, including the administration, interpretation, effectuation, and enforcement of the Settlement Agreement and this Final Judgment and Order. The Released Parties and each member of the Settlement Class are subject to the exclusive jurisdiction and venue of the United States District Court for the Southern District of Florida for any suit, action, proceeding, case, controversy, or dispute relating to the Settlement Agreement that is the subject of this final judgment. All Settlement Class members, excepting only those individuals, if any, who effectively excluded themselves from the settlement in accordance with the terms of the class notice, and all persons and entities in privity with them, are barred and enjoined from commencing or continuing any suit, action, proceeding, case, controversy, or dispute relating to the Settlement Agreement that is the subject of this Order of Final Approval and Final Judgment.

8.      This Court shall have exclusive jurisdiction and authority to rule upon and issue a final order with respect to the subject matter of any such action, suit, or proceeding whether judicial, administrative, or otherwise, which may be instituted by any person or entity, individually or derivatively, with respect to (i) the validity or enforceability of the Settlement Agreement, (ii) the authority of any Released Party to enter into or perform the Settlement Agreement in accordance with its terms, (iii) the remedies afforded by this Order of Final Approval and Final Judgment and the Settlement Agreement, or the attorneys' fees, class representatives' incentive award, interest, costs or expenses provided for in this Order of Final Approval and Final Judgment, (iv) any other foreseen or unforeseen case or controversy relating to or impacted by this Order of Final Approval and Final Judgment and Settlement Agreement, or (v) the enforcement, construction, or interpretation of the Settlement Agreement or this Order of Final Approval and Final Judgment.  This reservation of jurisdiction does not limit any other reservation of jurisdiction in this Order of Final Approval and Final Judgment nor do any other such reservations limit the reservation in this sub-section.

9.      Neither this Order of Final Approval and Final Judgment nor the Settlement Agreement shall be construed or deemed evidence of or an admission or concession on the part of University of Miami with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that University of Miami has asserted.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of _____, 2014.

                            _____
                            KATHLEEN M. WILLIAMS
                            UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record