UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOAN CARSTEN, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>UNIVERSITY OF MIAMI, a Florida not-for-profit corporation,<br><br>*Defendant*. | CASE NO: 1:14-cv-20497-KMW |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND MEMORANDUM
OF LAW IN SUPPORT THEREOF**

Plaintiff, Joan Carsten, on behalf of herself and all others similarly situated, by and through her undersigned counsel, submits this Unopposed Motion for Final Approval of Settlement Agreement and Memorandum of Law in Support Thereof.  Defendant University of Miami ("Defendant" or "UM") does not oppose the relief requested in this motion and consents to entry of Final Judgment granting the relief requested herein.

In this Motion, Plaintiff requests that the Court:

(1) Grant final approval of the proposed settlement, as described in the Settlement Agreement previously filed with the Court; and

(2) Grant final certification, pursuant to rule 23 of the Federal Rules of Civil Procedure, and solely for the purposes of the settlement, of a settlement class consisting of:

> Patients of the University of Miami Miller School of Medicine whose protected health information was contained within documents stored with a document storage vendor that could not be located in 2013, but excluding from the settlement class Defendant, any entity in which the Defendant has a controlling

1

interest, Defendant's legal representatives, officers, directors, assignees and successors, anyone who has waived or released any claims against the University of Miami regarding the Incident described in the Settlement Agreement, and any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons (the "Settlement Class").

## I.  INTRODUCTION

Plaintiff Joan Carsten commenced this putative class action on February 10, 2014 by the filing of a complaint against University of Miami (D.E. 1), which Plaintiff amended on March 7, 2014 (D.E. 5).[1] The Amended Complaint asserts, among other things, claims arising out of an alleged loss of Plaintiff's and Settlement Class members' personal information while the information was in the possession of Defendant. The Amended Complaint seeks monetary, declaratory and injunctive relief on behalf of Plaintiff, individually, and a putative class of former and present patients of the University of Miami Miller School of Medicine. Plaintiff seeks to certify a nationwide class of persons pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3). Defendant contests liability for the claims asserted in the Amended Complaint.

After the parties filed briefs directed to the sufficiency of the Amended Complaint, the parties began exploring resolution of Plaintiff's claims on a class-wide basis. These discussions were prompted by the parties' desire to avoid the expense, uncertainties and the burden of protracted litigation, and to put to rest any and all claims or causes of actions that have been, or could have been, asserted against Defendant arising out of the alleged loss of documents containing patients' information.

---

[1] References to the docket entries shall be referred to "D.E. __").

The parties jointly retained a mediator, Brian F. Spector, a highly skilled and experienced mediator with a proven track record for resolving complex disputes including class litigation, to mediate their settlement discussions.

Next, the parties conducted a full-day mediation session on June 2, 2014 to explore settlement. The parties exchanged offers and counteroffers and negotiated the points of each vigorously.

Following this mediation session, the parties, through their counsel, turned to the task of memorializing the terms of the settlement in a Settlement Agreement, along with an accompanying class notice form and claim form. The Settlement Agreement has been preliminarily approved by this Court (D.E. 18).

In accordance with the terms of the Settlement Agreement, Plaintiff moves for an order finally approving the Settlement Agreement and conditionally certifying, solely for the purposes of the settlement, a Settlement Class consisting of those patients of the University of Miami Miller School of Medicine whose protected health information was contained within documents stored with a document storage vendor that could not be located in 2013, but excluding from the Settlement Class the Defendant, any entity in which Defendant has a controlling interest, Defendant's legal representatives, officers, directors, assignees and successors, anyone who has waived or released any claims against the University of Miami regarding the Incident described in the Settlement Agreement, and any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons.

The Settlement Agreement was reached after considering such factors as: (1) the benefits to Plaintiff and the Class under the terms of this Settlement Agreement; (2) the strength of Plaintiff's case weighed against the settlement offer; (3) the attendant risks and uncertainty of

litigation, especially in complex actions such as this, which involve allegations relating to privacy; (4) the attendant risks and uncertainty of establishing liability and/or damages; (5) Defendant's vigorous defense of the litigation and continued denial of the claims and facts contained in the Class Action Complaint; (6) the desirability of consummating this Settlement Agreement promptly, to safeguard the privacy and security of Plaintiff and the Class Members' personal information; (7) providing a source of funds to compensate class members who had sustained damages due to the breach. Plaintiff agreed to the terms of the Settlement Agreement. Plaintiff and Class Counsel has determined that the Settlement Agreement provides substantial benefits to the Settlement Class and represents a fair, reasonable, and adequate settlement of the claims that are or could have been alleged in the Lawsuit.

Plaintiff filed her Motion for Preliminary Approval of Settlement Agreement on August 8, 2014 (D.E. 17). The Court subsequently granted that motion on August 13, 2014 (D.E. 18).

## II. THE SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS

### A. The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527,1530 (11th Cir. 1994); see also *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting Manual for Complex Litigation (Third) § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they

might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; see also *Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### 1. There Was No Fraud or Collusion.

The sharply contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  See, e.g., *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001).  Class Counsel negotiated the Settlement with vigor.  Plaintiff and the Settlement Class were represented by experienced counsel throughout the litigation and during the settlement negotiations.  The parties engaged in mediation before a highly skilled and experienced mediator.  These negotiations were arms-length and extensive. Declaration of John Yanchunis (D.E. 17) and Exhibit "A" attached hereto; Declaration of Brian Spector (D.E. 17).

### 2. The Settlement Will Avert Complex and Expensive Litigation.

This Action involves 13,319 members of the Settlement Class, who are former patients of Defendant, and addresses their privacy rights and how to redress the breach of their private information. The claims and defenses are complex, novel and sharply contested; litigating them is both difficult and time-consuming. Recovery by any means other than settlement would require additional litigation. See *United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317, 325-26 & n.32 (N.D. Ga. 1993) ("[A]djudication of the claims of two million claimants could last half a millennium"). By contrast, the Settlement provides immediate and substantial benefits to members of the Settlement Class, all of whom are current or former policyholders of Defendant.

The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id*. at 560 (alterations in original) (quoting *Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson,* 822 F. Supp. 1551, 1554 (M.D. Fla.1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides important

benefits to the Class.  Declaration of John Yanchunis (D.E. 17) and Exhibit "A" attached hereto.

### 3. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating."  *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 813 (3d Cir. 1995).  At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."  *Ressler*, 822 F. Supp. at 1555.

Before and after filing the Class Action Complaint and continuing throughout settlement negotiations, Plaintiff conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of Plaintiff's claims and potential claims and to determine how best to serve the interests of Plaintiff and the Class members. Informal discovery has been conducted in this case. Plaintiff's counsel reviewed information and documents provided by Defendant. Sufficient evaluation and informal discovery was conducted in the Action to provide Counsel insight into the strengths and weaknesses of the claims against UM and to make a reasoned judgment concerning the benefits of settlement compared to the risks attendant to continued litigation. Prior to settling, Class Counsel had developed ample information and performed analyses from which "to determine the probability of . . . success on the merits, the possible range of recovery, and the likely expense and duration of the litigation."  *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988).  Declaration of John Yanchunis 17. This factor supports final approval.

### 4. Plaintiff Would Have Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314; see also *Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

Class Counsel believes that Plaintiff has a good case against UM. Declaration of John Yanchunis (D.E. 17) and Exhibit "A" attached hereto. Even so, Class Counsel is mindful that UM advanced significant defenses that would have had to be overcome in any contested proceeding. *Id*. This case involved several major litigation risks. Many of the issues and legal territory at issue were largely uncharted. Although Plaintiff's Counsel had a good faith basis to believe that he would develop a convincing case, Counsel was also aware of practical difficulties associated with the prosecution of privacy cases which, as in the present case, often do not readily demonstrate actual monetary damages. Significantly, Plaintiff would have to overcome UM's argument that she had not suffered damages and lacked standing.

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Had Plaintiff prevailed against UM's motion to dismiss, and then had Plaintiff succeeded in obtaining class certification of a class, Plaintiff and the certified class would still have faced summary judgment, a trial on the merits, and a post-judgment appeal. Declaration of John Yanchunis (D.E. 17) and Exhibit "A" attached hereto. The uncertainties and delays from this process would have been significant. *Id*.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise. *See, e.g*., B*ennett v. Behring Corp*., 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*,

8

737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

## 5. The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (King, J.), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); see also *Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren*, 693 F. Supp. at 1059; see, e.g., *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.,* 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement."). Under the Settlement, Class Members who submitted valid claims demonstrating actual damages from the breach of their information are entitled to monetary benefits. Moreover, UM's implementation of improved security procedures and precautions to safeguard the privacy of its patients' private information is significant. Declaration of John Yanchunis (D.E. 17) and Exhibit "A" attached hereto.

**6.    The Opinions of Class Counsel, the Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement.**

Class Counsel wholeheartedly endorses the Settlement with UM. Declaration of John Yanchunis (D.E. 17) and Exhibit "A" attached hereto. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

The reaction of the Settlement Class to the Settlement has been positive. As of this date, only three members of the Settlement Class had requested to be excluded from the Settlement Class and there have been no objections to the Settlement. Declaration of Charles Marr, attached hereto as Exhibit "B". It has been recognized that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans. v. Amoco Oil Co.,* 211 F.R.D. 457, 467 (S.D. Fla. 2002); see *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").

**7.  The Court Should Certify the Settlement Class.**

This Court has previously found the requirements of Rule 23(a) and 23(b)(3) were

satisfied in this Action in a settlement posture (D.E. 18) .  The Court should make the same class certification findings in granting Final Approval.

Based on the foregoing, the Settlement is fair, adequate and reasonable, and merits Final

### B. The Requirements of Rule 23 Have Been Satisfied For Final Certification of the Settlement Class.

For the purposes of certifying the Rule 23(b)(2) and (3) Settlement Class sought by the Parties, the Manual for Complex Litigation (Fourth) § 21.632 advises:

> If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).

This comports with the Supreme Court's holding in *Amchem* that "[s]ettlement is relevant to class certification," but the requirements of Rule 23(a) and (b)(3) must still be met.  521 U.S. at 619-20.  When the Court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id*.

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As the Supreme Court noted in *Amchem*, however, the issue of class management is not relevant for

purposes of certifying the Settlement Class.

Numerosity. There are 13,319 Class Members. The numerosity factor specified in Rule 23(a)(1) is easily satisfied. *See, Sullivan v. Chase Inv. Servs., Inc*., 79 F.R.D. 246, 257 (N.D. Cal. 1978).

Commonality. The commonality requirement of Rule 23(a)(2) is met in this case. In *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2451(2011), the Court opined that in order to support a finding of commonality, the plaintiff's claims must stand on a common contention and that common contention, "must be of such a nature that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*.

Here, Plaintiffs have alleged numerous questions of fact and law common to the Class, including, among others:

> a. Whether Defendant failed to implement and maintain commercially reasonable procedures to ensure the security of Plaintiff's and Settlement Class members' information;
>
> b. Whether Defendant acted negligently in failing to implement and maintain commercially reasonable procedures to secure Plaintiff's and Settlement Class members' information;
>
> c. Whether Defendant acted negligently in delaying or failing to inform Plaintiff and Settlement Class members that it could not locate documents stored with a vendor that contained patients' information;

  d. Whether Defendant's conduct constitutes negligence;

  e. Whether Defendant's conduct was unfair, deceptive, and/or unconscionable;

  f. Whether Plaintiff and Settlement Class members are entitled to injunctive and declaratory relief; and

  g. Whether Plaintiff and the Class Members have sustained monetary loss and, if so, the proper measure of that loss.

Of course, the gravamen of Plaintiff's complaint is whether UM failed to adequately safeguard its patients' personally identifiable information and timely notify them that their information was compromised.

In this case there are clearly common issues. See *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class").

Typicality.  The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  1 Newberg on Class Actions § 3:13 (citations omitted).  In other words, the court must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  If litigating the named plaintiff's claims will advance the interests of absent class members, the claims are typical. *See, e.g., Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982).  The proper focus is whether plaintiff's claims "arise from the same alleged pattern or practice and are based on the same legal theory as the purported class member." *Veal*

*v. Crown Auto Dealerships, Inc.*, 263 F.R.D. 572 (M.D. Fla. 2006) *citing Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279, n. 14 (11th Cir.2000). ("a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences") (*citing, Walla v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985)); *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir.1984) ("a sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory").

Here, the claims of Plaintiff and each Class member arise from UM's alleged breach or loss of documents containing their private information.

Adequacy of Representation.  Rule 23(a)(4) requires that the named representatives "not possess interests which are antagonistic to the interests of the class."  1 Newberg on Class Actions § 3:21.  Second, the named representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id*.; *Amchem*, 521 U.S. at 625-26.  At the preliminary stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.  The class representative is a member of the Class and does not possess any interest antagonistic to the Class.  In addition, proposed Class Counsel is experienced in class action litigation and has submitted a declaration establishing his skills and experience in handling class litigation, including litigation of privacy claims, around the country and in this District.  Declaration of John Yanchunis (D.E. 17) and Exhibit "A" attached hereto.

Common Questions of Law and Fact Predominate.  For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  1 Newburg on Class Actions § 4:25; *see also, Amchem*, 521 U.S. at 623 ("The Rule

23(b)(3) predominance inquiry tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation). The parties agree that, for purposes of this settlement only, common questions of fact and law predominate over questions of fact and law affecting only individual members of the Class. A Class Settlement will ensure that funds are available to compensate injured Class members.

Superiority. Rule 23(b)(3) also requires that the class action device be superior to other methods of adjudication. Factors the Court may consider are: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class. As noted earlier, any difficulties of management of the Class need not be considered in this settlement context. *Amchem*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F.3D 273,302-303 (3d Cir. 2011) (holding that potential variances in different states' laws would not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class, as opposed to a litigated class). A class action settlement is superior to other means of resolution because a settlement affording Class members an opportunity to receive compensation benefits all parties.

**C.     Form and Method of Class Notice Are Adequate and Satisfy the Requirements of Rule 23.**

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156,

173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The form of order notice attached as an exhibit to the Settlement Agreement was previously approved by the Court (D.E. 19). As directed by the Court, the Class Notice was mailed by first-class mail to the last known address of each Settlement Class member, as updated by the National Change of Address Database. In addition, notices returned by the Postal Service with a forwarding address were re-mailed. Declaration of Charles Marr, attached as Exhibit B. The Class Notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and (23(e)(1). The Class Notice objectively and neutrally apprised all Class Members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Class claims and issues, that Class members could enter an appearance before the Court at the Fairness Hearing, that the Court would exclude from the Class any Class member who opts out (and sets for the procedures and deadlines for doing so), and the binding effect of a class judgment on Class members under Rule 23(c)(3)(B). The Notice further apprised Class Members of the procedures and deadlines for submitting objections.

### III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court issue an order finally certifying the Settlement Class and granting final approval of the Settlement Agreement.

Respectfully submitted,

/s/ John A. Yanchunis
JOHN A. YANCHUNIS, ESQUIRE
FBN: 0324681
jyanchunis@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor

                                          Tampa, Florida  33602
                                          (813) 223-5505 Telephone
                                          (813) 223-5402 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forwarded by electronic mail to all parties on the attached service list on this <u>10th</u> day of November, 2014.

                                            /s/ John A. Yanchunis
                                          John A. Yanchunis

## SERVICE LIST

Alfred J. Saikaili, Esq.
Daniel B. Rogers, Esq.
Jennifer A. McCloone, Esq.
Eric S. Boos, Esq.
SHOOK, HARDY & BACON, LLP
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131-4332
Email: e-servicemiami@shb.com

*Counsel for Defendant University of Miami*